UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **BESSEMER CITY BOARD OF EDUCATION,** } } } | |
| Plaintiff, } } | |
| } | **CASE NO. CV 08-B-738-S** |
| v. } } | |
| **UNITED STATES OF AMERICA,** } } | |
| Defendant. } | |

## MEMORANDUM OPINION

This case is currently before the court on defendant United States of America's ("USA") Motion to Dismiss Plaintiff's Complaint, (doc. 3),[1] for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("the Federal Rules"), as well as on plaintiff Bessemer City Board of Education's ("the Bessemer BOE") Motion to Strike Defendant, the United States of America's Variance Doctrine Defense, (doc. 7). Based upon the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that the USA's motion to dismiss is due to be granted and that the Bessemer BOE's motion to strike is due to be denied.

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

1

## I. MOTION TO DISMISS

### A. STANDARD ON 12(b)(6) MOTION TO DISMISS

According to the Federal Rules, a pleading that states a claim for relief must contain, besides an assertion of the grounds for the court's jurisdiction and a demand for relief, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In considering a defendant's motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules, the court must accept the factual allegations presented in the complaint as true and construe them in the light most favorable to the plaintiff. Fed. R. Civ. P. 12(b)(6); *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). The Supreme Court has recently explained that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *See Bell Atl. Corp. v. Twombly*, — U.S. —, 127 S.Ct. 1955, 1964–65 (2007) (internal citations omitted) (bracketed alteration in original). In essence, then, the Supreme Court has held that a motion to dismiss must be denied when "[plaintiffs' claims] may be supported by showing any set of facts consistent with the allegations in the complaint." *See Twombly*, 127 S.Ct. at 1969 (substantively rephrasing and thereby broadening the "no set of facts"

dismissal standard that was the Supreme Court's previous precedent in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).

### B. FACTUAL SUMMARY[2]

The Bessemer BOE is a city board of education, located in the city of Bessemer, Alabama, in Jefferson County. (Doc. 1 at ¶ 1.) For ten tax quarters during the years 1997, 1998, and 1999, the Bessemer BOE failed to file, pay, and deposit its employer's quarterly federal taxes with the Internal Revenue Service ("IRS"), also known as "941 taxes,"[3] admittedly due to "mismanagement of former officials and employees of the Bessemer Board of Education." (*Id.* at ¶ 5, Ex. 1, "Memorandum,"[4] at 3.) The Bessemer BOE was therefore issued a Notice of Federal Tax Lien on October 5, 2000, in the total amount of $1,253,889.45 for its nonpayment of these 941 taxes; on this notice, the name of the taxpayer is identified as "Bessemer Board of Education, a Corporation." (*Id.* at Ex.

---

[2] As required when evaluating a motion to dismiss for failure to state a claim upon which relief can be granted, the court has accepted all undisputed facts alleged in the Complaint as true and has construed all disputed facts in the light most favorable to the Bessemer BOE, the plaintiff.

[3] The Bessemer BOE alternatively refers to these taxes as "trust funds," (doc. 1, Ex. 1, "Memorandum," at 3), because they relate to income tax, social security, and Medicare trust funds, but there is no dispute that the underlying unpaid taxes involve those employee income taxes withheld as well as social security and Medicare taxes that must be accounted for and paid by the employer pursuant to IRS Form 941.

[4] Each of the Bessemer BOE's ten claims for refunds, as well as the contents of the identical "Memorandum" attached to each claim, are incorporated into the Complaint and are attached as exhibits to the Complaint. (*Id.* at ¶ 12, Exs. 1–10.)

(1).)  The Bessemer BOE paid these 941 taxes in 2000.  (*Id.* at Ex. 1 "Memorandum," at 1.)

The Bessemer BOE was also assessed penalties and interest on the underlying unpaid 941 taxes.  On April 28, 2006, the Bessemer BOE paid the IRS $1,086,885.69, in satisfaction of its liabilities for these penalties and interest payments.[5]  (*Id.* at ¶ 6.)  On June 30, 2006, the Bessemer BOE filed a Form 843, Claim for Refund and Request for Abatement, for each of the ten tax periods for which it was assessed penalties and interest.  (*Id.* at Exs. 1–10.)  The only differences among each of these forms are the tax periods and the amounts to be refunded or abated; the remainder of the forms is identical and identifies the Bessemer BOE as the claimant, the type of tax as "employment," the sections of the Internal Revenue Code ("IRC")[6] assessing the penalty as sections 6671 and 6672, the type of return filed as "941," and the date of payment as "April 28, 2006."  (*Id.*)  In the space left for an explanation, the Bessemer BOE referenced the identical four-page "Memorandum" attached to each refund claim, which outlined its objections to the assessment of penalties and interest.  (*Id.*)

---

[5] The USA notes that this payment actually only satisfied the penalties and interest for some of the ten periods, since the liabilities for the other periods were satisfied by the application of overpayment credits, and the IRS also abated a portion of the remaining penalties prior to the Bessemer BOE's payment.  (Doc. 3 at 4 n.6.)

[6] Title 26 of the U.S. Code is the IRC.  For consistency, the court will refer to all sections of Title 26 as ["IRC § ___"].

In the memorandum, the Bessemer BOE expressed three specific reasons why it sought a refund of the penalties and interest paid on April 28, 2006.  First, noting that it should be considered a state agency and not a "corporation," as it was identified on the Notice of Federal Tax Lien, the Bessemer BOE argued that intergovernmental tax immunity applies to bar the federal government from assessing penalties and interest against it because it is a state instrumentality.  (*Id.* at Ex. 1, "Memorandum," at 1–2.)  Second, the Bessemer BOE maintained that the penalties were being assessed pursuant to IRC § 6672, and that the Bessemer BOE was therefore not a "person" within the meaning of IRC § 6671(b) upon whom penalties could be assessed under IRC § 6672.  (*Id.* at 2.)  Third, the Bessemer BOE characterized the penalties and interest as a "trust fund recovery penalty" that "may be imposed on all people the IRS determines to be responsible for collecting, accounting for, and paying [federal income, social security, and Medicare taxes], and who acted willfully in not doing so."  (*Id.* at 3); *see* IRS Publication 15 (2008), at 24.  The Bessemer BOE argues that because it cannot be considered "a person," and because it did not act willfully in not paying the various employer's taxes, it cannot be held liable for any penalties.  (Doc. 1, Ex. 1, "Memorandum," at 3.)

The IRS sent letters to the Bessemer BOE disallowing certain of its refund claims. (*Id.* at ¶ 8, Exs. 11–13.)[7] Two of these letters contained the following reason for the

---

[7] The Bessemer BOE purports to have attached two additional IRS disallowance letters to its Complaint, referenced as exhibits 14 and 15, but the court only finds three of these letters filed with the Complaint. (Doc. 1 at Exs. 11–13.)  In addition, the court observes that in the Bessemer BOE's motion to strike, which also references the same disallowance letters, the

denial: "You filed your claim more than 3 years after you filed your tax return." (*Id.* at Exs. 12–13.) The other letter submitted to the court similarly cited untimeliness as the reason for disallowing the refund claim, but also stated: "The recently paid interest was paid by credits from prior years and therefore is still considered older than three years." (*Id.* at Ex. 11.) The letters informed the Bessemer BOE about the procedures for appealing a decision that its refund claims were filed late, but the court is unaware of whether the Bessemer BOE indeed appealed the disallowances to the IRS's Appeals Office. In any event, the Bessemer BOE filed the instant action in this court on April 30, 2008, more than a year after it received the disallowance letters, on September 18, September 28, and November 17, 2006, respectively. (*Id.* at Exs. 11–13.) The USA concedes that all jurisdictional prerequisites have been met. (Doc. 3 at 4); *see* IRC § 7422 (civil actions for refunds).

## C. DISCUSSION

The USA's motion to dismiss specifically identifies and responds to only the first two arguments distinguished by the court in the Bessemer BOE's "Memorandum," but its motion effectively encompasses all three arguments.[8] The court will begin with the

---

Bessemer BOE attaches the same three (not five) letters that are attached to the Complaint. (Doc. 7 at Exs. 1–3.) From the briefs and oral argument, the court has gathered that the IRS simply did not respond to some of the refund claims, so those claims were never expressly allowed or disallowed.

[8] In its opposition to the USA's motion to dismiss, the Bessemer BOE asserts two new arguments for its refund claims, that the imposition of the penalties and interest amount to a tax on the agency's gross income, in violation of IRC § 115, and that the strict construction rule

second and third arguments, since it can more easily dispose of those. To the second argument, that the Bessemer BOE is not a "person" as defined by IRC § 6671(b), and therefore is not subject to penalties under IRC § 6672, the USA explains that the penalties and interest at issue in the Bessemer BOE's refund claims were levied pursuant to IRC §§ 6651(a)(1) (failure to file tax return), 6651(a)(2) (failure to pay taxes), and 6656 (failure to make deposit of taxes), *not* pursuant to IRC §§ 6671 and 6672, as the Bessemer BOE contends both in its actual Claims for Refund as well as in its attached "Memorandum." (Doc. 3 at 4–3.) The Bessemer BOE essentially admits its mistake in its opposition to the motion to dismiss, when it argues that it should be permitted to respond to "the correct code sections imposing the penalties against the Plaintiff," referring to IRC §§ 6651(a)(1), 6651(a)(2), and 6656. (Doc. 5 at 9.) As the USA correctly points out, neither § 6651(a)(1) nor § 6651(a)(2) employs the word "person," so the Bessemer BOE cannot object to those sections' application on the basis that a state agency is not subject to them.

      Notably, the last of the "correct" code sections, IRC § 6656, does use the word "person," so it is possible that the Bessemer BOE's general argument still stands to

---

applies to construe the validity of penalties against the government and in favor of the taxpayer. (Doc. 5 at 5, 7–8.) The court agrees with the USA that these new reasons for a refund are barred by the variance doctrine, which prohibits the litigated claims from varying from the grounds cited in the administrative refund claim, and therefore the court does not address the Bessemer BOE's additional arguments in this discussion. The court further explains its reasoning for applying the variance doctrine in Part II, where the court considers the Bessemer BOE's motion to strike the USA's use of that doctrine.

preclude the application of IRC § 6656. For the definition of "person" within IRC § 6656, the court looks to IRC § 7701, which provides definitions for words used in the IRC where not expressly defined otherwise.[9] IRC § 7701(a)(1) states: "The term 'person' shall be construed to mean and include an individual, a trust, estate, partnership, association, company or corporation." While it is true that a state agency is not one of the entities specifically listed as a "person" for the purposes of the IRC, the court finds the Bessemer BOE sufficiently contemplated within the meaning of "person" in section 7701(a)(1), particularly in the section's reference to an "association," since that term implies non-profit or governmental activities. As such, the Bessemer BOE can be properly subjected to IRC § 6656. Even if the Bessemer BOE is not a "person" and IRC § 6656 does not apply, however, the agency would remain subject to the penalties and interest authorized by IRC §§ 6651(a)(1) and 6651(a)(2).[10]

The third argument that the court identified in the Bessemer BOE's "Memorandum," that the Bessemer BOE was improperly subjected to a "trust fund

---

[9] As requested by the court at oral argument, counsel for the USA sent a letter to the court and opposing counsel following the hearing to confirm that IRC § 7701(a)(1) provides the definition of the word "person" for IRC § 6656.

[10] Perhaps because the Bessemer BOE focused on the incorrect code sections in its "Memorandum," it never alleged that it failed to pay its 941 taxes "due to reasonable cause, and not due to willful neglect." *See* IRC § 6651(a)(1). The court observes, though, that even if the Bessemer BOE had made this argument (and if such an argument were not barred by the variance doctrine), the Bessemer BOE's admission in its Complaint that its failure to pay the 941 taxes was due to board mismanagement belies any allegation of reasonable cause, so a potential claim that there was reasonable cause could not be supported by any set of facts consistent with its allegation of mismanagement, and would therefore be due to be dismissed.

recovery penalty," is indirectly addressed by the USA's response to the second argument because the USA has now informed both the Bessemer BOE and the court of the pertinent provisions of the IRC that permit the IRS to seek penalties and interest on the Bessemer BOE's nonpayment of 941 taxes. Because the USA acknowledges that the Bessemer BOE is subject only to IRC §§ 6651(a)(1), 6651(a)(2), and 6656, which involve the failure to file a tax return, to pay taxes, and to make a deposit of taxes, the USA concedes that there is no "trust fund recovery penalty" being assessed. As a result, any argument that the Bessemer BOE might have made regarding a "trust fund recovery penalty" is inapplicable and does not aid the Bessemer BOE in stating a claim upon which relief can be granted.

  The court now returns to the Bessemer BOE's first and most fully-briefed argument, that as a state agency it is protected from any penalties and interest assessed for its failure to pay 941 taxes because of the doctrine of intergovernmental tax immunity. As an initial matter, the court finds an apparent contradiction in the fact that the Bessemer BOE has never challenged the imposition of the underlying 941 taxes, which also tax the Bessemer BOE as a state instrumentality, but that the Bessemer BOE does now challenge the imposition of the penalties and interest arising from the *nonpayment* of those 941 taxes. Since the USA has not raised this as a defense, the court does not make it a central part of its analysis;[11] however, the court does note that the lack of protest by the Bessemer

---

[11] When counsel for the Bessemer BOE was asked by the court at oral argument why the agency did not challenge the underlying 941 taxes on the intergovernmental tax immunity theory,

BOE to the propriety of *all* federal taxation weakens its present chief complaint, that the penalties and interest assessed on it, which are effectively late fees for its untimely tax payments, create an undue burden on its governmental functions, that is, on its ability to educate the children of Bessemer.  If the original taxes did not create an objectionable burden, it is difficult for the court to see how the penalties and interest do.

The USA's initial brief nicely summarizes the complicated Supreme Court history of the ever-narrowing intergovernmental tax immunity doctrine, (doc. 3 at 7–12), with its turning point in the plurality opinion in *New York v. United States*, 326 U.S. 572 (1946).  While the court will not review that history here, the court does note that, upon a review of the Supreme Court cases cited by both parties, none of these cases has held, as the USA contends, that a tax against a state can only be invalidated if it *both* 1) discriminated against the state, *and* 2) was directly levied upon a state or its instrumentalities.  (Doc. 3 at 13.)  Indeed, the case to which the USA cites for the most direct support of this logical *con*junction actually uses a logical *dis*junction, that is, the word "or": "After *Graves*, therefore, intergovernmental tax immunity barred only those taxes that were imposed directly on one sovereign by the other **or** that discriminated against a sovereign or those with whom it dealt."  *Davis v. Michigan Dep't of Safety*, 489 U.S. 803, 811 (1989) (emphasis added).  In addition, the other case to which the USA cites for the conjunction

---

counsel responded that the state had explicitly waived its agencies' immunity to this particular federal taxation, but that the Bessemer BOE considered the penalties and interest imposed from the nonpayment of the 941 taxes a fundamentally different kind of federal taxation, for which immunity had not been waived.

never clearly articulates the intergovernmental tax immunity doctrine with respect to federal taxation of state entities, but instead observes only that some nondiscriminatory federal taxes could be collected directly from a state even though a parallel state tax could not be collected directly from the federal government. *See South Carolina v. Baker*, 485 U.S. 505, 523 (1988). Declining to decide whether a federal tax that was both nondiscriminatory *and* levied directly on a state government was subject to intergovernmental tax immunity, the Supreme Court in *South Carolina* remarked in a footnote: "For our purposes, the important principle *New York* reaffirms is that the issue whether a nondiscriminatory federal tax might nonetheless violate state tax immunity does not even arise unless the Federal Government seeks to collect the tax directly from a state." *See id.* at 523 n.14.

Whether the intergovernmental immunity doctrine in its present form contains a conjunction or a disjunction, or whether it can be phrased in some other way that precludes its application to the Bessemer BOE, is of critical importance to the USA's ability to prevail on its motion to dismiss, since the USA has admitted that the penalties and interest in this case are, in fact, levied directly upon the Bessemer BOE, (doc. 3 at 13), and therefore on an agency of the state of Alabama. Consequently, if intergovernmental tax immunity applies solely as long as either the tax is directly levied on a state *or* if the tax is discriminatory, as *Davis* seems to suggest, then the Bessemer BOE would be, by the USA's own admission, immune from the penalties and interest

assessed. Fortunately for the USA, yet another Supreme Court case, one that was even characterized by the Bessemer BOE as possessing an "extensive explanation of the doctrine of 'Intergovernmental Tax Immunity" (doc. 1, Ex. 1, "Memorandum," at 2) (no close quotation in original), has interpreted *New York* in a manner that produces a slightly different phrasing for the modern intergovernmental immunity doctrine, one that does not use either a conjunction or disjunction:

> [T]he majority [in New York][12] reasoned that a nondiscriminatory tax may be applied to a state business activity where, as was the case there, the recognition of immunity would 'accomplish a withdrawal from the taxing power of the nation a subject of taxation of a nature which has been traditionally within that power from the beginning. Its exercise . . . by a nondiscriminatory tax, does not curtail the business of the state government more than it does the like business of the citizen.

*Massachusetts v. United States*, 435 U.S. 444, 457 (1978). The Court in *Massachusetts* therefore concluded that any nondiscriminatory tax on a state business activity for which immunity would frustrate a traditional subject of federal taxation should not be precluded by the intergovernmental tax immunity doctrine. Reviewing other of its previous precedents, the Court also acknowledged that: "an economic burden on traditional state functions without more is not a sufficient basis for sustaining a claim of immunity." *See id.* at 461.

---

[12] The Court in *Massachusetts* explained that it considered "the majority" in *New York* to be those who supported the Chief Justice's concurring rationale.

Based on *Massachusetts*, a case which appears to provide the court with the clearest and most extensive understanding of the Supreme Court's post-*New York* position on the application of the intergovernmental immunity doctrine as it relates to federal taxation of a state agency, the court finds that even if the penalties and interest at issue are taxes levied directly on a state instrumentality, those penalties and interest are obviously non-discriminatory because they are applied to any entity, public or private, that fails to file a tax return and that fails to pay its taxes, as well as to any "person" who fails to make a deposit of taxes. Furthermore, immunity would most certainly frustrate one of the traditional subjects of federal taxation, namely, the collection of income taxes, and, post-World War II, of social security and Medicare taxes; in fact, the court can think of no more traditional form of federal taxation upon employers. To be sure, any payment by the Bessemer BOE to the federal government would be a cost to the state and an economic burden that might well affect the traditional state function of education, but as the Supreme Court noted in *Massachusetts*, that economic burden alone "is not a sufficient basis for sustaining a claim of immunity." Because of the nondiscriminatory nature of the penalties and interest and their relationship to such traditional federal taxes, the court concludes that the Bessemer BOE is not immune from the penalties and interest assessed on it from its nonpayment of 941 taxes, and is therefore not entitled to a refund of those monies, leaving no claim upon which relief can be granted in its Complaint against the USA. Consequently, the USA's motion to dismiss is due to be granted.

## II. MOTION TO STRIKE

The Bessemer BOE has moved to strike the USA's use of the variance doctrine to limit the claims that the Bessemer BOE can bring to those stated in its Claims for Refund, which would notably eliminate the two arguments raised in the Bessemer BOE's opposition to the motion to dismiss that were not mentioned in its original "Memorandum," which was attached to those refund claims.  The Bessemer BOE contends that because the USA has now raised defenses other than the principal one cited in its disallowance letters, that the Bessemer BOE was untimely in filing its refund claims, the USA waives any right to employ the variance doctrine.  Indeed, the USA's motion to dismiss does not even make the argument that the Bessemer BOE was untimely in filing its refund claims, but instead refutes only those arguments contained in the Bessemer BOE's "Memorandum."  Although the court finds that the USA correctly characterizes the motion to strike as a sur-reply to the motion to dismiss, and one that is therefore outside the bounds of the court's briefing order, the court briefly addresses the merits of the motion to conclude that it is due to be denied, assuming that it is an independent motion.

Contrary to the assertions in the motion, the USA's reliance on *Charter Co v. United States*, 971 F.2d 1576 (11th Cir. 1992), for an explanation of the variance doctrine is not inappropriate, even though the facts of *Charter Co.* do differ from those in this

case.  In *Charter Co.*, the Eleventh Circuit clearly laid out the variance doctrine as follows:

> Subsequent litigation of the government's denial of a refund claim is limited to the grounds fairly contained within the refund claim.  Federal courts have no jurisdiction to entertain taxpayer allegations that impermissibly vary or augment the grounds originally specified by the taxpayer in the administrative refund claim.

971 F.2d at 1579.  The two newly-raised arguments in the Bessemer BOE's opposition to the motion to dismiss, that the imposition of the penalties and interest amount to a tax on the agency's gross income, in violation of IRC § 115, and that the strict construction rule applies to construe the validity of penalties against the government and in favor of the taxpayer, are not fairly contained within the refund claim; therefore, if the variance doctrine applies, these and any other new arguments cannot be asserted in this litigation and cannot be added in an amended complaint.

      The Bessemer BOE cites to a Fourth Circuit opinion, *Bowles v. United States*, for the proposition that the IRS waives its right to object to a taxpayer's assertion of new claims if the IRS asserts new defenses that surprise the taxpayer and time-bar the taxpayer from filing any new administrative refund claims.  *See* 820 F.2d 647, 649 (4th Cir. 1987).  Significantly, in *Bowles*, the IRS changed its position *three weeks before trial*, and again *on the first day of trial*, clearly giving the taxpayer no chance to develop a meaningful response.  *See id.* at 648.  Describing an older Ninth Circuit opinion, the court in *Bowles* explained that the Ninth Circuit had also allowed a taxpayer to advance a claim that

differed from those articulated in its refund claim, upon being confronted with a new IRS defense, because the taxpayer's new claim was "premised on the IRS's new position." *Id.*, *citing Brown v. United States*, 427 F.2d 57 (9th Cir. 1970). Specifically, the Ninth Circuit had commented:

> It would be unfair to allow the Government to assert a new defense to a taxpayer's claim at pretrial and simultaneously to prevent the taxpayer from making appropriate responses to it, because the taxpayer had not previously anticipated the defense. The administration of the revenue system would not be enhanced by encouraging taxpayers to baloon [sic] their refund claims in attempts to anticipate every conceivable Government defense.

427 F.2d at 62. Unlike in *Bowles*, as well as in *Brown*, the Bessemer BOE is not confronted here with entirely new defenses from the USA, but instead has received defenses that should have been wholly predictable because they are simply the opposite of the Bessemer BOE's own arguments in its refund claims. While it is true that the IRS's disallowance letters do not contain the same defenses as those that are now asserted in the USA's motion to dismiss, the court does not find that the motion to dismiss contains any defenses that are either surprises to the Bessemer BOE or that prevent the Bessemer BOE from making any claims "premised on" those defenses in subsequent litigation. Indeed, since the USA's defenses are premised on the arguments in the Bessemer BOE's refund claims, it is impossible for the Bessemer BOE to be precluded from making claims premised on those defenses; that is, those very claims have already been alleged.

## III. CONCLUSION

The court therefore finds that the variance doctrine properly applies to this case and that the Bessemer BOE should be prevented from making any new arguments or claims that differ from those presented in its administrative refund claims. As a result, the motion to strike is due to be denied, and to the extent that the motion is also a motion to amend the Complaint, that motion is likewise due to be denied. Since all other arguments fail to state a claim upon which relief can be granted, the motion to dismiss is due to be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 25th day of August, 2008.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE